UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

GLENN LEWIS, )
)
    Plaintiff, )
)
v. ) CV619-007
)
WARDEN ROBERT ADAMS, JR., )
*Warden*, *et al.*, )
)
    Defendants. )

# ORDER AND REPORT AND RECOMMENDATION

Plaintiff Glenn Lewis filed this 42 U.S.C. § 1983 action after he was deprived of his hypertension medication for six days while held in segregation. Doc. 1 at 8. The Court, having granted his request to pursue his case *in forma pauperis*, doc. 3, and Lewis having returned the necessary forms, docs. 4 & 5, now screens his Complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* Complaint that fails to state at least one actionable claim against a governmental entity or official.[1]

---

[1] Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule

## I.   BACKGROUND

Lewis' allegations are straightforward.  After a weapon was found in boots in his cell, he was provided with a copy of a disciplinary report referencing the discovery of the weapon, he was taken to segregation, and his personal items were inventoried and confiscated.  His hypertension medication was among the seized items.  He requested his medication (Lisinopril and Hetz) and Nurse Peacock gave him one dose and promised Lewis had been "added to the list to receive [his] medication." Doc. 1 at 7.  Six days went by without medication, and Lewis started experiencing chest pains.  Doc. 1 at 8.  He filled out a sick-call request form, reporting that he was unmedicated and experiencing symptoms. *Id*.  He was taken to medical and a blood pressure check revealed a "blood pressure reading of 176/126 and a heart beat of 98" which he alleges are "extremely high and abnormal posing the risk of a stroke or heart-attack." *Id*.  Nurse Williams then gave him his medication. *Id*.  At a disciplinary hearing later that afternoon, the weapons charge was dismissed. *Id*. (an investigation having revealed that Lewis had never been issued boots and camera

---

12(b)(6) dismissal).

footage having demonstrated the boots belonged to his cellmate). Lewis later discovered that his sick-call request had been destroyed. *Id.* at 9.

Lewis alleges that the Warden failed to train his subordinates, that Captain David Royal wrongfully approved his placement in segregation without proof or an investigation, that Officer Ashley Martin "malicious[ly]" filed a disciplinary report that the weapon was his, and that Jenkins Correctional Center medical staff "failed to provide medication" and thereby "put [Lewis] at risk of a stroke or heart attack." Doc. 1 at 9. He seeks the appointment of counsel and more than 15 million dollars in damages. *Id.* at 6.

## II. ANALYSIS

### A. Due Process

To make out a denial-of-procedural-due-process claim under § 1983[2], a plaintiff must establish three elements: (1) a deprivation of a

---

[2] There is no substantive due process right to be free from administrative segregation from the prison's general population. *See Hewitt v. Helms*, 459 U.S. 460 (1983), *receded from on other grounds by Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Montanye v. Haymes*, 427 U.S. 236, 224-25, 242 (1976) (observing that the Courts "have consistently refused to recognized more than the most basic liberty interests in prisoners," and that those interests do not include freedom from more adverse conditions of confinement).

constitutionally protected liberty or property interest[3]; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003); *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). Even assuming that Lewis' placement in segregation pending the outcome of an investigation meets the first two elements, he has not plausibly alleged that he received inadequate process.

> [A]n informal, nonadversary evidentiary review [is] sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.

*Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated on other grounds by Sandin*, 459 U.S. 460. Lewis was provided with notice of the charge against him (the disciplinary report) and the ongoing investigation, and

---

[3] The Eleventh Circuit Court of Appeals has identified two situations in which a prisoner — already deprived of liberty in the traditional sense — can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

was then provided with a hearing to argue his innocence. Doc. 1. "[E]ven if a prisoner is [ ] deprived of his liberty, thus requiring due process, it is well established that the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Baker v. Rexroad*, 159 F. App'x 61, 63 (11th Cir. 2005) (quote and cite omitted). Lewis has affirmatively pled that he was provided with meaningful due process. Doc. 1 at 8 (after less than one week, the investigation concluded and the charge against him was dismissed). Plaintiff has failed to state a procedural due process claim.

B. **Denial of Medical Care**

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (cites and footnotes omitted). A prisoner states a valid claim, under 42 U.S.C. section 1983, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs . . . or by prison guards in intentionally denying or delaying access to medical

care . . . or intentionally interfering with treatment once proscribed." *Id.* at 104-05.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). First, the plaintiff must prove an objectively serious medical need. *Id.* Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need. *Id.*

"A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (cite and internal quote omitted). Hypertension, of course, meets either of these definitions. *Carter v. Broward Cty. Sheriff Office*, 710 F. App'x 387, 391-92 (11th Cir. 2017); *see generally Jackson v. Pollion*, 733 F.3d 786, 789 (7th Cir. 2013) ("Hypertension is a serious condition. Untreated it can result in strokes or heart attacks."); *Hunt v. Uphoff*, 199 F.3d 1220, 1222

6

(10th Cir. 1999) (prisoner who claimed serious medical needs of diabetes and hypertension had sufficiently pleaded facts to allege deliberate indifference); *Garza v. Harris Cty., Texas*, 2011 WL 3925020 at *13 (S.D. Tex. Sept. 7, 2011) ("[Inmate]'s hypertension, especially in light of his long history with it, including a previous stroke, was a serious, indeed life-threatening condition. . . .").

To establish the second element, deliberate indifference to that serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). The defendants here were aware of Lewis' diagnosis, but failed to provide him with his medication for nearly a week while he was in segregation until he was experiencing chest pain. This is not "mere disagreement" with a prescribed treatment, *see Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985) (a prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him), and (as pled) is more than "mere negligence" in treatment, *see Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) ("mere accidental inadequacy, negligence in

7


diagnosis or treatment, [and] even medical malpractice" do not give rise to § 1983 liability).[4]  Rather, plaintiff contends that defendants knew he had high blood pressure, knew that by not regularly medicating him his blood pressure would rise, unchecked, and actively disregarded that risk to his detriment.  "When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir.1989).  This claim survives frivolity review.

### C.  Improper Defendants

Lewis' due process claim being subject to dismissal, no claims remain against Captain Royal or Officer Martin.  They should therefore be **DISMISSED** from the case.  As should Warden Adams, against whom no allegations are made for either claim.  § 1983 claims require an allegation of a causal connection between a defendant's acts or omissions and the

---

[4]  The Court notes that Lewis was not completely denied treatment for months on end like the plaintiff in *Carter*.  710 F. App'x 387.  Except for six isolated days, Lewis was apparently provided appropriate high blood pressure treatment.  The Court is reticent to hold that such sporadic treatment failures are constitutional, however, given that high blood pressure can be "life-threatening" if not properly treated.  While defendants may yet demonstrate that their interrupted care was constitutionally adequate, at the screening stage, Lewis has pled enough to warrant a response from appropriate defendants.

8

alleged constitutional deprivation. *See Zalter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). Such claims cannot be based upon theories of *respondeat superior* or vicarious liability. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Lewis' Complaint does not include *any* allegation connecting Warden Adams to the allegedly unconstitutional denial of medical care, aside from a single allegation that he failed to "train his subordinates." Doc. 1 at 9. That's not enough to state a claim. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted). Both claims against Warden Adams should therefore be **DISMISSED**.

Nor can Lewis name the "Medical Staff" at Jenkins Correctional Center. Not every staff member was involved in the deprivation of his rights, after all. He names Nurse Peacock, but contends that Nurse Peacock actually provided him with his correct dosage and attempted to remedy the medication dispensation oversight. Doc. 1 at 7-8. He also names Nurses Gibson and Williams, but only alleges that they treated him

(taking his blood pressure and providing him with his medication) when he put in a sick call after a week of worsening symptoms. *Id*. at 8. He also met with "Ms. Homes" and Lisa Rowe, medical records administrators, but clearly they were not involved in the alleged denial of medical care. *Id*. at 9. In other words, the Court needs more. Plaintiff must name, with specificity[5], the individuals he contends are responsible for putting him in harm's way.

### III. CONCLUSION

Taking the allegations in the complaint as true, the disregard of Lewis' hypertension constitutes deliberate indifference. Plaintiff is **ORDERED** to amend his Complaint to name the defendants individually

---

[5] Generally, fictitious party pleading is not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is a difference, however, between a claim against fictitious parties and a claim against real parties sued under a fictitious name. *See Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992). A claim against an unnamed defendant (or "John Doe" or "Jane Doe") may therefore proceed when the plaintiff's description of the defendant is sufficiently specific that they may be identified for service even though an actual name is unknown. *See id.* In such cases, the allegations in the complaint must make it clear that the plaintiff can uncover the defendant's name through discovery. *See id.*; *see also Bowens v. Superintendent of Miami South Beach Police Dep't*, 557 F. App'x 857, 862 (11th Cir. 2014) (per curiam) ("[A] claim may be maintained against unnamed defendants where allegations in the complaint make clear the plaintiff could uncover the names through discovery.").

In other words, if Lewis is unable to name the individuals he contends deprived him of adequate medical care, but can provide sufficiently identifying information, he may designate the defendants as "John / Jane Doe."

involved in his hypertension medication failure, **within 30 days** of service of this Order. His due process claim, however, should be **DISMISSED** and defendants Royal, Adams, and Martin should be **DISMISSED** from the Complaint.

Meanwhile, plaintiff must pay for filing this lawsuit. Based upon his furnished information, he owes an initial partial filing fee of $6.27. Doc. 5; *see* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula) (emphasis added). Plaintiff's custodian shall deduct $6.27 from plaintiff's account and remit it to the Clerk of Court. The custodian also shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.

In the event plaintiff is transferred to another institution, plaintiff's present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

A copy of this Order and a copy of the Consent to Collection of Fees from Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 27th day of February, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA