# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| GLENN LEWIS, | ) |
| Plaintiff, | ) |
| v. | ) CV619-007 |
| WARDEN ROBERT ADAMS, JR., *Warden*, et al., | ) |
| Defendants. | ) |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff Glenn Lewis filed this 42 U.S.C. § 1983 action after he was denied his hypertension medication for six days while held in segregation. Doc. 1 at 8. The Court granted his request to pursue his case *in forma pauperis*, doc. 3, and Lewis returned the necessary forms, docs. 4 & 5. The Court screened his complaint pursuant to 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* Complaint that fails to state at least one actionable claim against a governmental entity or official.[1]

---

[1] Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

The Court dismissed plaintiff's claims against Captain David Royal, Officer Ashely Martin, and Warden Robert Adams Jr. Doc. 10. However, the Court approved for service plaintiff's denial of medical care claims against RN Wingfield, Nurse Williams, Nurse John Doe, Nurse Jane doe, and Dr. Kevin Marbler. Doc. 11. After that order, but before defendants had appeared, plaintiff filed a Motion for Temporary Restraining Order, doc. 12.

For the following reasons, the Court **RECOMMENDS** that defendants' Motion for Summary Judgment, doc. 41, be **GRANTED**. Plaintiff's Motion for a Temporary Restraining Order, doc. 12, and Motion to Amend the Complaint, doc. 21, should also be **DENIED**. Plaintiff's motions for discovery and sanctions, doc. 27, doc. 30, doc. 31, doc. 39, and doc. 44 are **DENIED**. His Motion to Quash, doc. 35, is **DENIED AS MOOT**. Defendants' motion for extension of time, doc. 38, is likewise **DENIED AS MOOT**.

I. BACKGROUND

Lewis' allegations are straightforward. After a weapon was found in boots in his cell, he was provided with a copy of a disciplinary report referencing the discovery of the weapon, he was taken to segregation, and

his personal items were inventoried and confiscated. His hypertension medication was among the seized items. He requested his medication (Lisinopril and Hetz) and Nurse Peacock gave him one dose and promised Lewis had been "added to the list to receive [his] medication." Doc. 1 at 7. Six days went by without medication, and Lewis started experiencing chest pains. Doc. 1 at 8. He filled out a sick-call request form, reporting that he was unmedicated and experiencing symptoms. *Id*. He was taken to medical and a blood pressure check revealed a "blood pressure reading of 176/126 and a heart beat of 98" which he alleges are "extremely high and abnormal posing the risk of a stroke or heart-attack." *Id*. Nurse Williams then gave him his medication. *Id*. At a disciplinary hearing later that afternoon, the weapons charge was dismissed. *Id*. (an investigation revealed that Lewis had never been issued boots and camera footage demonstrated the boots belonged to his cellmate). Lewis later discovered that his sick-call request had been destroyed. *Id*. at 9.

Lewis alleged that the Warden failed to train his subordinates, that Captain David Royal wrongfully approved his placement in segregation without proof or an investigation, that Officer Ashley Martin "malicious[ly]" filed a disciplinary report that the weapon was his, and

3

that Jenkins Correctional Center medical staff "failed to provide medication" and thereby "put [Lewis] at risk of a stroke or heart attack." Doc. 1 at 9. He sought the appointment of counsel and more than 15 million dollars in damages. *Id*. at 6. The Court determined that, at least at screening, he had alleged deliberate indifference to a serious medical need. The Court allowed this claim alone to survive screening.

V. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[2]

Defendants have filed a motion for summary judgment arguing that plaintiff failed to exhaust his administrative remedies. Specifically, defendants argue that plaintiff grieved more than one issue in a single filing and that he grieved non-grievable offenses. As a result, they claim he failed to comply with prison procedure and should not be allowed to pursue this suit. Some brief background is helpful here.

Jenkins Correctional Center has a grievance procedure which is available to all inmates via either the prison library or the inmate facility handbook provided upon arrival and orientation. Doc. 41-1 at 1. There is nothing in the record to indicate that plaintiff was not aware of this

---

[2] Defendants have sought an extension of time to conduct discover in this case. Doc. 38. Because the Court recommends granting the Motion for Summary Judgment, the Motion for an Extension is **DISMISSED AS MOOT**.

procedure. The two-step procedure requires that an inmate first file an original grievance to be delivered to the counselor. Doc. 41-1 at 15. The offender must submit the grievance within 10 calendar days from the date he knew or should have known of the facts giving rise to the grievance. *Id*. The grievance is then screened and may be accepted or recommended for rejection. *Id*. at 16. The policy also requires that the "complaint on the Grievance Form [] be a single issue/incident." Doc. 41-1 at 15.

Plaintiff filed a Grievance on September 19, 2018 alleging that he was restrained and taken to segregation where he was written up for possession of a weapon. Doc. 41-1 at 7. He also alleged in the same grievance that he was denied his medication for hypertension. *Id*. The Prison initially rejected plaintiff's grievance for failing to follow procedure and specifically cited the following two exclusions:

- "Disciplinary actions, including any warnings, sanctions, fees, or assessments. The disciplinary appeal procedure is located in SOP 209.01, Offender Discipline."
- "Involuntary assignments to Administrative Segregation. The procedure to appeal such assignment is located in SOP 209.06, Administrative Segregation."

*Id.* at 6. Plaintiff then appealed that rejection specifically challenging his denial of medication for hypertension. *Id.* at 5. The Central Office Appeal Response stated (for the first time) that plaintiff's grievance was being denied for grieving more than one grievance at a time. *Id.* at 4. Defendants claim that plaintiff's failure to properly follow grievance procedures means he also did not exhaust his remedies and that his case should be dismissed. Doc. 41 at 7.

Under the PLRA's exhaustion provision, a prisoner must exhaust all available administrative remedies *before* filing an action that challenges the conditions of his confinement. *See* 42 U.S.C. § 1997e(a). Exhaustion is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285-86 (11th Cir. 1999), *aff'd in part and vacated and remanded on other grounds by Harris v. Garner*, 216 F.3d 970 (2000) (*en banc*); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA"). When a defendant moves to dismiss and puts forward proof showing that plaintiff failed to exhaust and defendant did not inhibit his efforts to do so, the PLRA requires the Court to dismiss the unexhausted claims. *See Turner*

*v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (describing the two-prong "facial" and "factual" evaluation of exhaustion as a "matter in abatement," as it is a precondition to suit, not an adjudication on the merits); *Harris*, 190 F.3d at 1285-86. Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id.* at 89-91 (citation omitted); *see also Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006) (proper exhaustion requires filing a grievance "under the terms of and according to the time set by" prison officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005). Simply put, if an administrative remedy is "available," it *must* be exhausted. 42 U.S.C. § 1997e(a).

As an initial matter, the pleadings sufficiently alleged that plaintiff exhausted his administrative remedies. Doc. 1 at 3-4. Defendants thus

bear the burden of proving that plaintiff failed to exhaust his administrative remedies. *Jones*, 549 U.S at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Dixon v. United States*, 548 U.S. 1, 8 (2006) ("stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party).

Generally, defendants are correct, the Court typically will not consider a prisoner to have exhausted his administrative remedies if he does not comply with the procedural rules. However, a prison may waive its own procedural rules such that "a prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits . . . [D]istrict courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the Rule." *Whatley v. Smith (Whatley II)*, 898 F.3d 1072, 1080 (11th Cir. 2018); *citing Whatley v. Warden (Whatley I)*, 802 F.3d 1205, 1215 (11th Cir. 2015). The question then is whether the prison "affirmatively invoke[d] the procedural rule at the administrative level" regarding the single-issue grievance, and whether there was any other aspect of

defendant's grievance which was decided on the merits. *Id.* at 1086. If none of the issues were decided on the merits and if the prison rejected the grievance for procedural issues, then plaintiff has failed to exhaust his administrative remedies and his case should be dismissed.

Plaintiff's initial grievance details events which occurred on September 11, 2018 and challenge his placement in segregation, being taken to medical without explanation, denial of medication, and jeopardizing his opportunity to seek parole. Doc. 41-1 at 7. While the initial rejection of his grievance was based on issues other than the duplicative issue/incident argument, what matters for purposes of this argument is that there is no indication that plaintiff ever received a determination on the merits, and that at the final level of appeal, his grievance was rejected for procedural issues. Because the prison enforced its procedural rules at the final administrative level, plaintiff has not properly exhausted his administrative remedies. His lawsuit should be dismissed.

Generally, the Court would dismiss the remaining motions in this case as moot. However, the vast majority consist of plaintiff's allegations that he has been denied discovery (and is therefore seeking sanctions) and

a prior filed temporary restraining order. Likewise, plaintiff is seeking leave to amend his complaint—which although not briefed, could in some circumstances abrogate the motion for summary judgment. Accordingly, the Court addresses the remaining motions below.

## II. TEMPORARY RESTRAINING ORDER

Plaintiff requests that the Court preclude him from being transferred as "retaliation" during the pendency of this action. Doc. 12 at 1. Plaintiff certified only that he served the Court. Rule 65(b) provides that

> [t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Even if appropriate notice had been provided, a temporary restraining order is only to be granted when the complained of conduct is imminent and no other relief or compensation is available. *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). Plaintiff has offered no evidence that defendants plan to transfer him and he has not demonstrated how he would be harmed by a transfer, other than perhaps

10

by a delay in his mail. In the absence of allegations setting forth the facts as to the irreparable injury, the Court lacks authority to enter a temporary restraining order. Fed. R. Civ. P. 65(b). However, even in the absence of Rule 65(b), the Supreme Court has made it clear that the federal courts have limited authority to address the conditions of a prisoner's confinement except in the most extreme cases. *Sandin v. Conner*, 515 U.S. 472 (1995) (holding that convicted inmate cannot challenge change in conditions of confinement unless such change imposes "significant and atypical" hardship not contemplated by his sentence). Plaintiff's concern about a transfer is just the sort of common hardship that the Supreme Court has identified as outside courts' power to enjoin. Likewise, plaintiff does not have a constitutionally protected right to remain in, or be transferred to, any penal institution. *Adams v. James*, 784 F.2d 1077 (11th Cir. 1986). Accordingly, his motion for a temporary restraining order should be **DENIED**.

### III. MOTION TO AMEND COMPLAINT

Plaintiff next requests that the Court allow him to amend his complaint to add the following individuals as defendants:

1. Core Civic Inc.;

2. Catlin Specialty Insurance Company;

3. Mark A. Emkes;

4. Members of the Board of Directors of CCA;

5. Correctional Medicine Associates;

6. Carle Battles M.D.;

7. Felicia Herring;

8. Raymond McKay.; and

9. PHS.

Doc. 21. Plaintiff alleges that these individuals and entities, with the exception of the insurance company, should be joined because the failed to train their employees and make sure that their policies and procedures were properly followed. The insurance company is proffered as a defendant because they are liable for the risk of loss. *Id.* at 21

Even if plaintiff could properly sue the individuals alleged here, he has not properly pled any cause of action against them. In order to prevail on a failure-to-train claim, plaintiff must establish that the supervisors had a policy of failing to train or supervise employees and that this policy caused their employees to violate his constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (discussing municipal liability

in the context of a failure to train or supervise claim); *see West v. Tillman*, 496 F.3d 1321, 1331 & n. 16 (11th Cir. 2007) (citing *Gold* in the context of a failure-to-train claim directly targeting specific supervisors). Absent any express written or oral policy encouraging the violation of a detainee's rights (which plaintiff has not alleged), he is required to plead facts demonstrating that the supervisors' failure to train amounted to deliberate indifference to plaintiff rights. *See Gold*, 151 F.3d at 1350; *see also Battiste v. Sheriff of Broward County*, 261 F. App'x 199, 202 (11th Cir. 2008) (per curiam) ("A supervisory official is liable under § 1983 when 'his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact; and the failure has actually caused the injury of which the plaintiff complains.'" (*quoting Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994))).

Plaintiff can meet this standard by showing that "the need for more or different training is obvious, such as when there exists *a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right*." *Belcher*, 30 F.3d at 1397–98 (discussing failure to train claims at the summary judgment level) (internal citations

omitted)(emphasis added)(internal citations omitted); *see Cottone*, 326 F.3d at 1360 (explaining that at the pleading stage, plaintiff must offer some facts supporting the causal connection between the supervisor and the alleged violator, including, *inter alia*, facts showing widespread abuse which put the supervisor on notice of an ongoing problem or a custom or policy resulting in such violations). Alternatively, he may do so "in a narrow range of circumstances" where there is no pattern of violations, but the failure to train was *obvious* and led to the "highly predictable" violation of plaintiff's constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 64 (2011). Plaintiff's allegations come nowhere near alleging those facts.

As to the insurance company, insurance companies are not state actors and are not subject to suit under § 1983. *See Wiley v. American Ins. Co.*, 2011 WL 4860028 (S.D. Tex. Oct. 12, 2011, at *2); see also Am. Mfrs. Mut. Ins. Co.*, 526 U.S. 40 at 41 (1999) ("A private insurer's decision to seek . . . review of the . . . necessity of the particular medical treatments is not fairly attributable to the State so as to subject the insurer to the Fourteenth Amendment's constraints . . . [s]tate action requires both an alleged constitutional deprivation caused by acts taken pursuant to state

law and that the allegedly unconstitutional conduct be fairly attributable to the State."). Accordingly, plaintiff's Motion to Amend, doc. 21, the complaint should be **DENIED**.

## IV. PLAINTIFF'S DISCOVERY MOTIONS

Plaintiff has filed a flurry of discovery motions. He filed a Motion for Sanctions, doc. 27, a Motion for an Order to Compel Discovery, doc. 30, a motion for Discovery and Production of Documents, doc. 31, a Motion to Quash, doc. 35, a second Motion to Compel Discovery, doc. 39, and a second Motion for Sanctions, doc. 44. The Court addresses each in turn.

Plaintiff first seeks sanctions against defendant's counsel for allegedly committing perjury when he filed an amended disclosure of interested persons. Doc. 27 at 2-3. Plaintiff has proffered no evidence, via affidavit or otherwise, in support of this allegation. The Court will not sanction—or indeed consider sanctioning—any party in the absence of a signed declaration under penalty of perjury but proceeding solely on the unsupported allegations of a party. This motion is **DENIED**.

Plaintiff has also filed motions to compel discovery, doc. 30, doc. 31, and doc. 39. However, all discovery disputes are subject to Local Rule 26.5 which requires that the party seeking to compel "certify that a good faith

effort has been made to resolve the dispute before coming to court." Despite his *pro se* status, defendant is obligated to comply with the local rules. To the extent plaintiff seeks to file discovery requests via the Court, this is not proper. *See, e.g.,* doc. 31, doc. 39. Discovery materials are not ordinarily filed with the Court and the Court cannot act as an intermediary between him and defendants. If plaintiff needs to serve discovery on defendants, he must do so pursuant to the Federal Rules of Civil Procedure. He may not use the Court as a go-between. Accordingly, his motions to compel discovery are **DENIED**. Because plaintiff never served discovery of defendants, his second motion for sanctions, doc. 44, for failure to respond to that discovery is likewise **DENIED**.

Plaintiff has also filed a Motion to Quash his deposition. He argues that he did not receive the necessary 21-day notice, and that defendants failed to request leave to take the deposition from the Court. Plaintiff is correct that a motion must be filed with the Court to take a deposition of an individual confined in prison. Fed. R. Civ. P. 30(a)(2)(B). Defendants have responded that they withdrew their request to conduct the deposition and have now requested leave of the Court. Doc. 36 at 2. Accordingly, plaintiff's motion is **DENIED AS MOOT**. Because the Court

recommends the granting of defendant's motion for summary judgment, the Court declines to reach defendants' request for a deposition.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that defendants' Motion for Summary Judgment, doc. 41, be **GRANTED**. Plaintiff's Motion for a Temporary Restraining Order, doc. 12, and Motion to Amend the Complaint, doc. 21, should also be **DENIED**. Plaintiff's motions for discovery and sanctions, doc. 27, doc. 30, doc. 31, doc. 39, and doc. 44 are **DENIED**. His Motion to Quash, doc. 35, is **DENIED AS MOOT**. Defendants' motion for extension of time, doc. 38, is likewise **DENIED AS MOOT**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this <u>12th</u> day of March, 2020.

/s/ Christopher L. Ray

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA